UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

PEGGY MARIE SCHMITT,             CASE NO.  03-3295   ADM/AJB

    Plaintiff,

    v.

CHASE MANHATTAN BANK NA, et al.,

    Defendants.

---

**TRANS UNION, LLC'S REPLY TO PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS TRANS UNION, LLC'S AND CSC CREDIT SERVICES, INC'S, MOTIONS FOR SUMMARY JUDGMENT**

---

**I.**     **INTRODUCTION**

    A.     Plaintiff failed to respond to TU's proximate cause / duty arguments and, therefore, Plaintiff has abandoned her FCRA claims;

    B.     Plaintiff's Section 1681e(b) claims fail since TU cannot be responsible for First USA's ("**FUSA**") initial reporting prior to Plaintiff's notice of dispute;

    C.     Plaintiff's Section 1681i claims fail since the actual evidence destroys those claims despite Plaintiff's misconstruction and misstatements of the record and/or reliance upon irrelevant and inadmissible evidence.  The actual undisputed material facts show:

      1.    TU properly conveyed that someone claiming to be Plaintiff stated they were not deceased;

      2.    TU provided all required relevant information for FUSA to review its large file of information acquired from its direct relationship with Plaintiff;

      3.    FUSA verified all information on Plaintiff's FUSA Account;

      4.    TU's procedures are not unreasonable or overly complex;

      5.    TU never reinserted a previously deleted "item of information";

D.    Plaintiff has no provable damages and has misconstrued the evidence and relied upon inadmissible hearsay to support her contention that she was denied credit; and

E.    There is no evidence of willful violations.

## II.    ARGUMENT

### A.    PLAINTIFF ABANDONED HER FCRA CLAIMS

Arguments not developed are deemed waived.  See Anderson I (*citing* Central States, Southeast and Southwest Areas Pension Fund v. Midwest Motor Express, 181 F.3d 799, 808 (7th Cir. 1999).  Plaintiff failed to address TU's proximate cause / duty argument.

### B.    PLAINTIFF'S SECTION 1681e(b) CLAIMS FAIL

Plaintiff failed to offer any reason why Trans Union should be held liable for reporting deceased remarks prior to Plaintiff's request for reinvestigation.  In fact,

the only FCRA claims Plaintiff is now pursuing are her claims for alleged various violations of Section 1681i.

**C.     PLAINTIFF'S SECTION 1681i CLAIMS FAIL**

Plaintiff wrongfully claims TU knew the deceased notation was inaccurate. See Plaintiff's Response, at 31.  No evidence supports this allegation. Presumably, Plaintiff attempts to rely upon the testimony of Little and Hickman. See Plaintiff's Response, at 4-5.  However, that testimony merely establishes TU knows that if it receives a letter from someone (whether the person they claim to be or not) TU knows they have not received a letter from a dead person.  Of course, TU now knows that the person who sent letters to TU was in fact the Plaintiff.  However, TU does not "guess" on disputes and relies, as allowed by the FCRA, upon the furnisher who has the relationship with and a relatively large mass of information compared to TU.

Little's testimony does not support Plaintiff's allegation that TU knew the FUSA Account was inaccurate.  TU knew what one person claimed, nothing more.

Plaintiff next argues that FUSA's ACDV responses were inconsistent.  The first response from FUSA instructed TU's system to change only one of the two deceased remarks – the ECOA code.  However, by not changing the remark field, FUSA verified the deceased status of the card holder (and knew it was doing so).  There was nothing inconsistent about FUSA's response which told TU only that this was an "Individual" account and confirmed that the card holder was

3

deceased (and contradicted the information provided by the person who claimed to be Plaintiff). Reporting "Individual" is irrelevant where the account holder is deceased. Moreover, changing only one code would have made no difference to Plaintiff since the Account would still have been reported as deceased (again, FUSA was well aware of this).

FUSA's second and third responses were identical as reported to TU's automated system. Again, TU appropriately relied upon FUSA knowing this. Both verified the Account as TU was reporting it. Plaintiff makes much of the fact that the second response also included changes. However, TU and FUSA agree that TU can rely on those changes being meaningless unless FUSA also checks the "Change Data As Shown" box – which it did not. Plaintiff has presented no evidence to the contrary.

Moreover, Plaintiff cannot successfully claim that the procedures were unreasonable simply because FUSA mistakenly checked the wrong box. FUSA admits that TU can rely on them to properly respond and admits that their response was improper on this occasion.

Plaintiff next argues that TU's procedures were not reasonable because they are confusing (apparently to Plaintiff but not FUSA). There is no evidence that supports this assertion or that FUSA misunderstood the procedure for removal of the deceased remark. To the contrary, the evidence shows that FUSA was aware that TU could and would rely upon it unconditionally verifying the deceased remark when it checked "Verified As Reported". Moreover, FUSA

was aware that to delete "deceased", FUSA and TU's system required that the Remarks Field be changed by insertion of an "XR" into the Compliance Condition Code.  Indeed, this is exactly what FUSA attempted to do in its second botched response.

Furthermore, Plaintiff would agree that the system should, as it does, have numerous redundant safeguards to ensure that improper changes are not easily made through mistake or inadvertence.  Indeed, Plaintiff would fault Trans Union if only a single mistaken keystroke (as opposed to here where two mistaken keystrokes are required) resulted in a faulty report of "deceased", allowing any one of thousands of identity thieves to steal a deceased person's identity.

Plaintiff claims that evidence of an alleged subsequent remedial measure (in another case, under a different set of facts, involving different type of deceased reporting event and different type of cause) is proof of unreasonableness and negligence.  F.R.E. 407 expressly provides that, even if the evidence <u>did</u> involve the instant matter, it is inadmissible.

Plaintiff wrongfully claims TU representatives DeMarco and Lenz gave confusing testimony.  First, whether these representatives confused Plaintiff is irrelevant since FUSA was not confused and that is all that matters.  Second, the DeMarco correspondence did not relate to Plaintiff but to another consumer and dispute - the details of which are unknown.

Plaintiff also alleges that TU failed to include all relevant information in its ACDVs to FUSA.  Specifically, Plaintiff argues that TU should have forwarded

Plaintiff's dispute letters, Plaintiff's dispute histories with FUSA, and that TU "believed" Plaintiff was alive. First, there was no need to forward the letter. The dispute was simple – someone claiming to be Plaintiff stated that FUSA is reporting them as deceased but that person claims Plaintiff is not deceased. This was adequately communicated to FUSA as evidenced by FUSA's responses that, after reviewing their large file of information, garnered from their direct relationship with Plaintiff, their own customer, Plaintiff was deceased. Moreover, FUSA needed no other information since FUSA had already concluded (it is now known) that the Account was reported as deceased in error, but did not properly so advise TU. Second, FUSA already had the dispute history. Third, as explained above, TU did not "believe" Plaintiff was alive; merely that someone claiming to be Plaintiff stated that Plaintiff was alive.

Plaintiff argues that TU reinserted the deceased remarks in March 2003 in violation of Section 1681i(a)(5)(B) – (C). However, the provisions of these Sections are only triggered if information is deleted as a result of a Section 1681i(a) reinvestigation. Such is not the case.

Finally, Plaintiff asserts that a reasonable jury could conclude that it was unreasonable for TU to expect furnishers such as FUSA to make changes in five fields to effect a change to one single item of information. Certainly, one would expect Plaintiff to produce supporting evidence from the industry and its users (much less FUSA). No such evidence exists.

D.   **PLAINTIFF'S CLAIMS FOR DAMAGES FAIL**

Mortgage Plus <u>secured</u> financing for Plaintiff through Guaranty Residential. Curiously, Plaintiff never closed on the loan but instead withdrew her application after learning of her approval. Mortgage Plus concluded Plaintiff's actions were most unusual and Plaintiff probably never actually intended to close a loan. It could be that, after consulting counsel, Plaintiff was attempting to "trump up" a case for damages against the Defendants.

The other lender, CSB Mortgage, did not deny Plaintiff's application. Plaintiff relies upon Mortgage Plus' Johanson as to what CSB Mortgage did. This is hearsay. Johanson's hearsay statements are directly contradicted by CSB Mortgage itself. Curiously, again, Plaintiff <u>withdrew</u> her application and was never "denied". (Cento Aff., Ex. K at 21-22; 28-29; 30:17-25; 31:1-2; 31:17-20; 31:21-32:4; 33:10-14; and 65:20-24) Deposition of Bruce Strong, 48:14-49:6. CSB Mortgage did not even know whether TU was reporting Plaintiff as "deceased". (<u>Id</u>. at 47:21-13).

Finally, Plaintiff cites no evidence in her Response to support any alleged Toyota Credit denial or liability related to TU's handling of the Saks or Chase Accounts.

**E.    THERE IS NO EVIDENCE OF WILLFUL VIOLATIONS**

Plaintiff can produce no evidence that TU's actions were willful. None of these contentions have been established by the facts (disputed or otherwise) of this case and each has been addressed in TU's Memorandum or in this Reply.

7

        Respectfully submitted,

        *s/ G. John Cento*
        G. John Cento, Esq.
        SCHUCKIT & ASSOCIATES, P.C.
        10 West Market Street
        3000 Market Tower
        Indianapolis, Indiana  46204
        Office: (317) 363-2400
        Fax: (317) 363-2257
        E-Mail: gjcento@schuckitlaw.com

        *Lead Counsel for Trans Union, LLC*

Dated: June 13, 2005

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that this Reply conforms to the requirements of LR 7.1(c) and (e).  This Reply was prepared using Microsoft Office Word 2003 and is produced using 13-point font.  The length of this Reply is 1452 words.  The work count of the work processing program has been applied specifically to include all text, including headings, footnotes, and quotations.

                                    Respectfully submitted,

                                    *s/ G. John Cento*
                                    G. John Cento, Esq.
                                    SCHUCKIT & ASSOCIATES, P.C.
                                    10 West Market Street
                                    3000 Market Tower
                                    Indianapolis, Indiana  46204
                                    Office: (317) 363-2400
                                    Fax: (317) 363-2257
                                    E-Mail: gjcento@schuckitlaw.com

                                    *Lead Counsel for Trans Union, LLC*