UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Peggy Marie Schmitt,

            Plaintiff,

   v.

Chase Manhattan Bank, N.A., Saks
Incorporated d/b/a Herberger's, Bank One
Corporation a/k/a First USA Bank, N.A.,
Trans Union, L.L.C., Experian Information
Solutions, Inc., CSC Credit Services, Inc.,
Equifax, Inc. d/b/a Equifax Information
Services, Inc., CBC Companies d/b/a Credit Bureau
of Sioux Falls, Inc., and Factual Data Corp.,

           Defendants.

MEMORANDUM OPINION
AND ORDER
Civil No. 03-3295 ADM/AJB

---

John H. Goolsby, Esq., Consumer Justice Center, Little Canada, MN, argued for and on behalf of Plaintiff.

G. John Cento, Esq., and Robert J. Schuckit, Esq., Schuckit & Associates, PC, Indianapolis, IN, argued for and on behalf of Defendant Trans Union, L.L.C.; Erik J. Girvan, Esq., Faegre & Benson LLP, Minneapolis, MN, argued for and on behalf of Defendant CSC Credit Services, Inc.; and Chris Angell, Esq., Murnane Brandt, St. Paul, MN, appeared for and on behalf of Defendant Equifax, Inc. d/b/a Equifax Information Services, Inc.

---

## I. INTRODUCTION

On June 24, 2005, oral argument before the undersigned United States District Judge was heard on Defendant Trans Union, L.L.C. ("Trans Union") and CSC Credit Services, Inc. ("CSC") (collectively, "Defendants") Motions for Summary Judgment [Docket Nos. 92, 101, 122]. Equifax, Inc. d/b/a Equifax Information Services, Inc. ("Equifax"), joined CSC's Motion for Summary Judgment [Docket No. 122].[1] All other parties in this case have been previously

---

[1] Shortly after oral argument on these Motions, Plaintiff and Defendant Equifax signed a stipulation dismissing Equifax from the case [Docket No. 134]. Additionally, Plaintiff's attorney

dismissed. In her Complaint [Docket No. 1], Plaintiff Peggy Marie Schmitt ("Plaintiff") alleges Defendants violated the Fair Credit Reporting Act ("FCRA") by failing to reasonably investigate and correct false reports that Plaintiff was deceased. For the reasons set forth herein, Defendants' Motions for Summary Judgment are granted.

## II. BACKGROUND

On September 11, 2002, Defendant Bank One Corporation a/k/a First USA Bank, N.A. ("First USA"), received a letter from the Law Office of William Schroeder informing First USA that his client, a woman named Peggy L. Schmitt, had recently died. Kenworthy Aff. [Docket No. 105] Ex. C. Peggy L. Schmitt had formerly held a First USA credit card, as did Plaintiff Peggy M. Schmitt. Id. Some weeks later, First USA forwarded the letter to its estates department. Id. The estates department, however, incorrectly changed Plaintiff Peggy M. Schmitt's account to list her as deceased instead of Peggy L. Schmitt. Id. First USA changed two codes on Plaintiff's account to indicate she was deceased. First, the deceased flag field was changed to indicate Plaintiff was deceased, which altered a code known as the ECOA code. Second, Plaintiff's status code was altered. Id. On October 20, 2002, Plaintiff contacted First USA, prompting First USA to label her account "suspect fraud." Id. Plaintiff attempted to correct the status on her account with First USA, and to that end, contacted First USA three times on October 23, 2002. Id. Following Plaintiff's phone calls, Mr. Schroeder again contacted

---

informed the Court via letter [Docket No. 136] that Plaintiff and Defendants Trans Union and CSC had agreed to a stipulation dismissing any claims relating to accounts other than the First USA account, any claims related to Defendants' handling of Plaintiff's account prior to receiving her first dispute letter, and Plaintiff's credit defamation claim. Plaintiff's attorney is counseled that in the future, such stipulations should be timely filed in advance of any oral argument to conserve the resources of both the parties and the Court.

First USA in an attempt to correct the erroneous information that Plaintiff had died, when in fact it was his client, Peggy L. Schmitt, who had passed away.  Id.  First USA responded by changing Plaintiff's status code to reflect that she was not deceased; however, First USA failed to change the deceased flag field on Plaintiff's account.  Id.  As a result, Plaintiff's ECOA code continued to indicate she was deceased.  Id.  First USA continued to report that Plaintiff was deceased until July 2004.

### A.     Facts Unique to Defendant Trans Union

Trans Union first received a dispute letter from Plaintiff dated December 20, 2002 on December 26, 2002.  Little Aff. [Docket No. 103] ¶ 40, Ex. A.  Plaintiff's letter indicated that some of Plaintiff's creditors, including First USA, were reporting Plaintiff as deceased.  Id.  Trans Union confirmed that First USA and one other account were reporting Plaintiff as deceased.  Id. ¶ 42.  None of Plaintiff's other accounts, however, were reporting her as deceased.  Id. ¶ 43.  On December 30, Trans Union commenced a reinvestigation into Plaintiff's First USA account.  Id. ¶ 45.  Trans Union sent a dispute form to First USA, noting that Plaintiff disputed her status as deceased, and requesting First USA verify the information it transmitted to Trans Union.  Id. ¶¶ 46-49.  When First USA received the dispute form, it checked Plaintiff's account records.  Kenworthy Aff. Ex. C.  First USA's system, however, only gave access to the status code, not the deceased flag field or ECOA code.  Id.  Thus, First USA's operator did not see that the deceased flag field and ECOA code listed Plaintiff as deceased.  Id.  First USA responded to Trans Union's dispute communication by changing the ECOA code and instructing Trans Union to "change data as shown."  Little Aff. ¶ 50, Ex. B.  First USA, however, did not delete the "deceased" comment in the remarks field, and consequently, Trans Union's system failed to

3

remove the deceased status on Plaintiff's First USA account. Id. ¶ 52.

On March 12, 2003, counsel for Plaintiff submitted a letter to Trans Union disputing the ownership of the First USA account. Id. ¶¶ 65-66, Ex. E. As a result of this letter, Trans Union began another reinvestigation of the First USA account. Id. ¶ 70. Because Plaintiff was disputing the ownership of her account, Trans Union's dispute communication to First USA indicated that Plaintiff's account might belong to someone else. Id. ¶ 71. This time, First USA corrected all the fields necessary to indicate Plaintiff was indeed living; however, the operator checked the "verified as reported" box as opposed to the "change data as shown" box. Id. ¶ 73. Accordingly, Trans Union's system did not make the appropriate changes. Id. ¶¶ 74-75.

A week after receiving Plaintiff's second dispute letter, Trans Union received another letter from Plaintiff's counsel on March 19, 2003. Id. ¶ 86, Ex. G. Contrary to the previous letter received from Plaintiff's counsel, this letter acknowledged that the First USA account did indeed belong to her, although it was still reporting her as deceased. Id. ¶ 89, Ex. G. In response to the letter, Trans Union launched a third reinvestigation with First USA. Id. ¶ 96. Trans Union identified the issue of potentially inaccurate deceased codes and remarks, and also included the narrative "Consumer Is Not Deceased" in its communication to First USA. Id. ¶¶ 97, 100. First USA, however, again failed to correct all the appropriate fields, failing to remove the deceased indicators on the deceased flag field and ECOA code. Kenworthy Aff. Ex. C. Once again, therefore, Trans Union's system did not record the appropriate changes. Little Aff. ¶ 104.

**B.    Facts Unique to Defendant CSC**

On December 19, 2002, CSC received a letter from Plaintiff indicating that some of the accounts listed on her report incorrectly reported her as deceased. Girvan Decl. [Docket No. 98]

Ex. A.  In response, CSC began a reinvestigation of Plaintiff's First USA account.  Fogleman Decl. [Docket No. 97] ¶¶ 18-19.  CSC's dispute form indicated that the status of Plaintiff's account was inaccurate.  Id. ¶ 20.  Because First USA did not respond to CSC's dispute request in a timely manner, CSC removed the First USA account from Plaintiff's credit report.  Id. ¶ 21; Girvan Decl. Ex. E.  On January 20, 2003, CSC sent Plaintiff a letter informing her that her First USA account had been deleted from her credit report.  Fogleman Decl. ¶ 22.

### III. DISCUSSION

**A.     Standard of Review**

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall issue "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  On a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party.  Ludwig v. Anderson, 54 F.3d 465, 470 (8th Cir. 1995).  The nonmoving party may not "rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial."  Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

**B.     Fair Credit Reporting Act**

Plaintiff alleges Defendants Trans Union and CSC violated 15 U.S.C. §§ 1681e(b) and 1681i of the FCRA by reporting Plaintiff as deceased on her First USA account.  The FCRA

5

requires consumer reporting agencies, such as Trans Union and CSC, "adopt reasonable procedures for meeting the needs of commerce. . . ." 15 U.S.C. 1681(b). However, "reasonable procedures" does not require total accuracy, as is reflected in the fact that the FCRA is not a strict liability statute. Henson v. CSC Credit Services, 29 F.3d 280, 284 (7th Cir. 1994). The FCRA also sets forth obligations that consumer reporting agencies must follow in settling consumer disputes of information contained within credit files. 15 U.S.C. § 1681i. Specifically, when notified of a dispute by a consumer, the consumer reporting agency must conduct a reinvestigation and either record the current status of the disputed information or delete the item before the end of a 30-day period. 15 U.S.C. § 1681i(a)(1)(A). Meanwhile, furnishers of credit information, such as First USA, are also subject to requirements under the FCRA. For example, furnishers are not allowed to furnish information relating to a consumer if the furnisher has been notified that the information is inaccurate by the consumer. 15 U.S.C. § 1681s-2(a)(1)(B). Furthermore, the FCRA requires furnishers to notify consumer reporting agencies when they discover information they are reporting is inaccurate. 15 U.S.C. § 1681s-2(a)(2).

15 U.S.C. § 1681e(b) requires consumer reporting agencies to follow "reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." Therefore, to maintain a claim under § 1681e(b), Plaintiff must demonstrate that: "(1) inaccurate information was included in a consumer's credit report; (2) the inaccuracy was due to defendant's failure to follow reasonable procedures to assure maximum possible accuracy; (3) the consumer suffered injury; and (4) the consumer's injury was caused by the inclusion of the inaccurate entry." Philbin v. Trans Union Corp., 101 F.3d 957, 963 (3d. Cir. 1996). Additionally, § 1681i requires a consumer reporting agency to reinvestigate the accuracy

of information reported in its files if a consumer notifies the agency of a potential error.  15 U.S.C. § 1681i.  Both Trans Union and CSC employ the Automated Consumer Dispute Verification ("ACDV") process, which has been held to be an adequate method of reinvestigation.  Lee v. Experian Information Solutions, 2003 WL 22287351, at *6 (N.D. Ill. Oct 2, 2003).

Here, the undisputed evidence demonstrates that both Trans Union and CSC followed reasonable procedures to ensure accuracy in Plaintiff's credit report.  Additionally, Trans Union and CSC reasonably reinvestigated Plaintiff's disputes under § 1681i.

Both Trans Union and CSC have well-established procedures in place to ensure accuracy.  No evidence has been presented to refute the assertion of Trans Union and CSC that First USA is a reliable provider of information.  Further, no evidence has been proffered to demonstrate that the dispute procedures used by Trans Union and CSC are faulty.  The only conclusion that can be drawn from the undisputed facts is that Plaintiff was the victim of a series of unfortunate circumstances leading to the erroneous reporting.  Initially, First USA incorrectly listed Plaintiff as deceased, instead of Peggy L. Schmitt.  Then, during numerous reinvestigations by Trans Union, First USA incorrectly verified Plaintiff's information, thereby failing to correct the information on Trans Union's credit report.  First USA admitted that it was aware the mistakes it made in transmitting information to Trans Union would not correct the information in Trans Union's system. Kenworthy Aff. Ex. 3.  There is even less evidence that CSC's procedures were unreasonable.  CSC received only one dispute letter from Plaintiff, and promptly began a reinvestigation.  When First USA did not respond, CSC followed its established procedure of deleting the account from Plaintiff's credit report; also a result of which First USA was aware.

Id.

Plaintiff asserts Trans Union should have procedures in place to deal with contradictory communications from furnishers, such as First USA. However, it is clear that First USA understood Trans Union's system and the procedures necessary to correct erroneous information. To hold Trans Union to a higher standard would require a degree of accuracy not contemplated under the FCRA. Recently, in an analogous case, a district court opined:

> It would be unreasonable to require a consumer reporting agency to develop systems that would catch infrequent and irregular mistakes that furnishers might make. The Act does not impose such requirements. Its goal is to have consumer reports that are fair and accurate; it does not demand perfection from an industry that deals in billions of pieces of information.

Anderson v. Trans Union, LLC., et al., 367 F. Supp. 2d 1225, 1237 (W.D. Wis. 2005). This reasoned summation of the goals and requirements of the FCRA applies to the situation at bar. Although it would be theoretically possible to design systems and procedures to catch the errors made in the circumstances described by Plaintiff's case, the expense, cost, and effort to implement such a system would be far beyond what the FCRA requires. Trans Union notes that it currently maintains five million tradelines reporting a deceased code. To track down the accuracy of each tradeline would impose a heavy burden.

Plaintiff's arguments against CSC carry even less weight than those against Trans Union. CSC was requested to reinvestigate Plaintiff's First USA account on a single occasion, and followed its procedures in doing so. When First USA did not respond in the time frame required by the FCRA, CSC deleted the account from Plaintiff's file, as was its practice. This saved Plaintiff from any potential damage that could have been caused by the incorrect account line. At all times, CSC's actions were reasonable. The fault for the regrettable sequence of events,

which caused the false information to remain of record, falls at the doorstep of First USA and not the remaining Defendants.

Because both Trans Union and CSC employed systems and procedures reasonably designed to limit the amount of errors in credit reports, and because both Trans Union and CSC reasonably investigated Plaintiff's disputes, both Motions for Summary Judgment are granted.

**C.      Plaintiff's Motion for Continuance Pursuant to Rule 56(f)**

In its opposition to Defendants' Motions, Plaintiff argues that Defendants' Motions should be stayed under Rule 56(f) pending the continued deposition of William Stockdale. Plaintiff claims Defendants instructed Stockdale, a Trans Union employee, to refuse to answer questions regarding the reliability of First USA's information.  Plaintiff, however, has not brought a motion to compel discovery on this issue, and furthermore, the discovery deadline in this case has long passed.  Additionally, Plaintiff's Rule 30(b)(6) deposition notice to Stockdale did not specifically name the reliability of First USA as a topic for the deposition.  Therefore, any instruction by Defendants' counsel to refuse to answer questions on this topic was appropriate.  Plaintiff's Motion is denied.

## IV. CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant Trans Union, L.L.C.'s Motion for Summary Judgment [Docket No. 101] is **GRANTED**;

2. Defendant CSC Credit Services, Inc.'s Motion for Summary Judgment [Docket No. 92] is **GRANTED**; and

3. Plaintiff Peggy Marie Schmitt's Motion for Continuance Pursuant to Rule 56(f) is **DENIED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

BY THE COURT:


s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated: August 23, 2005.